*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2001 FED App. 0323P (6th Cir.)
File Name: 01a0323p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

UNITED STATES OF AMERICA,
  *Plaintiff-Appellee,*

  *v.*

Nos. 99-6230/6236

DANNA YVONNE BENDER
(99-6230) and DAVID E.
CULLIVER (99-6236),
  *Defendants-Appellants.*

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
No. 96-00030—Todd J. Campbell, District Judge.

Argued: August 1, 2001

Decided and Filed: September 14, 2001

Before: CLAY, GILMAN, and WALLACE, Circuit
Judges.[*]

_____

[*]The Honorable J. Clifford Wallace, Circuit Judge of the United States Court of Appeals for the Ninth Circuit, sitting by designation.

1

————————————

**COUNSEL**

**ARGUED:** Mark C. Scruggs, Nashville, Tennessee, C. Mark Pickrell, Nashville, Tennessee, for Appellants. William Cohen, ASSISTANT UNITED STATES ATTORNEY, Nashville, Tennessee, for Appellee. **ON BRIEF:** Mark C. Scruggs, Nashville, Tennessee, C. Mark Pickrell, Nashville, Tennessee, for Appellants. Daniel J. Perry, ASSISTANT UNITED STATES ATTORNEY, Nashville, Tennessee, for Appellee.

————————————

**OPINION**

————————————

RONALD LEE GILMAN, Circuit Judge. Danna Yvonne Bender was arrested on February 22, 1996 after she signed for an Express Mail parcel that United States postal inspectors had previously opened and found to contain approximately 21.6 grams of cocaine base (crack). Bender and codefendant David E. Culliver were indicted on the following five counts: (1) conspiracy to distribute crack, (2) aiding and abetting the unlawful use of the United States mails to commit a drug felony, (3) possession with intent to distribute crack, (4) possession with intent to distribute powder cocaine, and (5) possession of a firearm by a convicted felon. A jury found Bender guilty on all five counts and Culliver guilty on counts one, two, three, and five. Bender appeals, challenging both her conviction and sentence, while Culliver appeals his sentence only. For the reasons set forth below, we **AFFIRM** Bender's conviction and sentence, as well as the sentence imposed on Culliver.

# I.  BACKGROUND

## A.  Factual background

In early 1996, United States postal inspectors observed the increased transportation of narcotics from Florida to the Nashville, Tennessee area through the United States mails, particularly by Express Mail.  Postal inspectors were on the lookout for suspicious packages shipped between these locations in order to detect narcotics trafficking.  On February 21, 1996,  Inspector Steve Cheuvront intercepted Express Mail parcel number EG100814144US that was addressed to 4610 Forest Ridge Drive in Hermitage, Tennessee.  The parcel indicated that the sender was Willie M. Williams of 2210 Northwest 153rd Street, Opa Locka, Florida 22054.  Law enforcement officials in Florida informed the postal inspectors in Tennessee that Willie M. Williams was not a listed resident at the given address.

An experienced drug-detection dog was brought to the Express Mail parcel.  The dog reacted positively, indicating that controlled substances were contained within the package.  In addition, the parcel was secured with clear plastic tape.  Postal inspectors have learned from experience that packages containing drugs are usually sealed in this manner in an attempt to trap the odor inside.  Given the sealing and the positive identification of the parcel by the drug-detection dog, Postal Inspector Max Jordan obtained a federal search warrant on February 22, 1996 to open the parcel.  Once opened, the inspectors found a pair of men's shoes in a shoe box.  Also inside the shoe box was approximately 21.6 grams of cocaine base that had been placed in a styrofoam plate that was, in turn, folded and taped, wrapped in newspaper, and enclosed in two padded bags.  The postal inspectors removed most of the cocaine base and three small samples for field testing, placing a cookie and a small sample of the cocaine base back in the parcel.  They also installed a transmitter inside the parcel that was designed to emit a slow beeping signal as long as the parcel remained intact.  Once the parcel was opened,

however, the transmitter was programmed to emit a fast beeping signal.

The delivery supervisor at the Hermitage Post Office testified that a woman identifying herself as Mrs. Culliver called the post office once on February 21, 1996 and twice on February 22, 1996 to inquire about the delivery status of Express Mail parcel number EG100814144US. This same woman also told the supervisor that she had inquired about the delivery status of her package by calling the toll free number for Express Mail information.

On February 22, 1996, at approximately 1:35 p.m., Postal Inspector Wallace Bowden delivered the parcel to 4610 Forest Ridge Drive, Hermitage, Tennessee. Danna E. Bender accepted the parcel and signed the delivery sheet as "Danna Culliver." Prior to the controlled delivery, Jordan had obtained a warrant to conduct a search of the recipient's residence.

Approximately three minutes after the delivery, the transmitter enclosed in the parcel switched into the alarm mode, indicating that the parcel had been opened. An entry team had been waiting outside and executed the federal search warrant for the residence. Upon entering, the drug-enforcement agents came across a four-year-old boy on a couch in the living room. They found Bender in the rear bedroom. She was talking on the telephone, with the opened parcel located next to her on the bed. Bender was placed under arrest.

The agents conducted a thorough search of Bender's residence. They found many items indicative of narcotics trafficking. In Bender's bedroom, they discovered receipts from money transfers and car rentals, a mirror with white powder on it, and a beaker on the dresser. They also found two Oreo cookie tins. One tin contained small baggies, a vial containing white powder, marijuana, and razor blades. The other tin contained a small bag of cocaine, as well as vials, strainers, measuring spoons, scoops, and multicolored baggies. A shaving kit held numerous test tubes and beakers.

table decision) (declining to address the merits of a challenge to a sentence under *Apprendi* when the argument was raised for the first time at oral argument)*; see also United States v. Harper*, 246 F.3d 520, 522-23 (6th Cir. 2001) (addressing the *Apprendi* argument of one defendant who filed a letter raising the *Apprendi* issue prior to oral argument, but declining to address the merits of his codefendant's *Apprendi* claim because the codefendant raised it pro se for the first time after oral argument). If Culliver wishes to pursue a challenge to his sentence based on *Apprendi*, he will have to do so by filing a petition for post-conviction relief under 28 U.S.C. § 2255.

### III. CONCLUSION

For all of the reasons set forth above, we **AFFIRM** Bender's conviction and sentence, as well as the sentence imposed on Culliver.

the commission of the offense as long as it constitutes reasonably foreseeable conduct.'" *United States v. Nichols*, 979 F.2d 402, 412 (6th Cir. 1992), *aff'd*, 511 U.S. 738 (1994) (quoting *United States v. Williams*, 894 F.2d 208, 211 (6th Cir. 1990)). Although there is no case on point in our circuit in which a defendant has argued that he incorrectly received a two-level enhancement under U.S. Sentencing Guideline § 2D1.1(b)(1) because he was in another state when the conspiracy was uncovered, we do not see how Culliver's situation is legally distinguishable from any other coconspirator who is shown to be knowledgeable about the presence of the firearms but is not physically on the premises where part of the illegal activity occurred. *See id.*

In the present case, the district court's conclusion that Culliver was in constructive possession of a firearm during a drug-trafficking offense is supported by both the jury's verdict against him for being a felon in possession of a firearm and the district court's own factual finding that "the two firearms were connected with the offense." We therefore conclude that the district court did not err in enhancing Culliver's sentence under U.S. Sentencing Guideline § 2D1.1(b)(1).

## H.   Culliver's belated *Apprendi* argument

For the first time at oral argument, Culliver's counsel claimed that Culliver's sentence is invalid as a result of the Supreme Court's decision in *Apprendi v. New Jersey*, 530 U.S. 466 (2000). Culliver's counsel failed to file any written statement regarding the merits of this argument. Furthermore, he simply announced at oral argument that *Apprendi* affected Culliver's sentence, without providing any legal or factual support for his position. The government responded that Culliver had waived the *Apprendi* issue because he was raising it for the first time at oral argument.

We agree with the government's position that Culliver has waived any *Apprendi* challenge on direct appeal, and we will therefore not address this issue. *See United States v. Vanaman*, Nos. 99-5393, 99-5402, 99-5404, 99-5407, 2001 WL 392006, at *12 (6th Cir. Apr. 11, 2001) (unpublished

Most of the beakers contained traces of cocaine, and Bender's fingerprints were found on one of them. One beaker that was missing from the collection in the shaving kit was found on Bender's dresser.

The agents also found two handguns in the bedroom closet. One was loaded and found on a shelf in the closet; the other was found in a briefcase on the closet floor. The briefcase belonged to Bender and contained important family papers. Other items found in the residence included Express Mail envelopes and packages, a coffee can with a false bottom, two scales, and two bottles containing white powder.

The agents mailed several items found during the search of Bender's residence to the United States Postal Inspection Service National Forensic Laboratory in Dulles, Virginia. After conducting tests, the laboratory determined that the compressed white powder in the styrofoam plate was 19.96 grams of cocaine base. In addition, the laboratory found traces of cocaine on measuring spoons, four beakers, four glass test tubes, and several of the plastic baggies.

Bender and Culliver had an ongoing relationship, including the fact that Culliver was the father of Bender's son. Both Bender and Culliver had prior felony convictions. The government presented evidence that between December 5, 1995 and February 22, 1996, Bender sent Culliver 18 money-wire transfers to Florida totaling $9,500. Culliver claimed that the wired money came from his work doing construction jobs and selling T-shirts. Between August of 1995 and February of 1996, 20 Express Mail packages were sent to Culliver at three different addresses in the Nashville area. Culliver claimed that these packages contained T-shirts or other gifts.

Bender maintained throughout her trial that she was not guilty of distributing either powder cocaine or cocaine base. She twice stated on direct examination that she had never sold drugs, but had become addicted to drugs in 1992 due to stress. Bender testified that she smoked crack-laced marijuana cigarettes, and that during the course of a week she would use

approximately one ounce of marijuana and five to ten grams of powder cocaine. She also stated that she purchased drugs with money transferred from Culliver. Regarding the events that occurred on the day of her arrest, Bender contends that she never opened the parcel that she signed for. She also testified that the items of drug paraphernalia that were seized belonged to Walter Bailey Culliver, her codefendant's cousin who lived in the same residence. In addition, she contended that she did not know that there were firearms in the closet.

## B.  Procedural background

The government issued an original indictment on March 13, 1996, charging only Bender. A superseding indictment was entered on May 1, 1996, charging both Bender and Culliver with (1) conspiracy to distribute cocaine base in violation of 21 U.S.C. § 846; (2) unlawful use of a communication facility in a drug felony, or aiding and abetting the unlawful use of a communication facility, in violation of 21 U.S.C. § 843(b) and 18 U.S.C. § 2; (3) possession with intent to distribute cocaine base in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2; (4) possession with intent to distribute powder cocaine in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2; and (5) being a convicted felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). The district court ordered that the charges against Bender and Culliver be consolidated for trial following Culliver's arrest on December 18, 1997.

Bender filed several motions in limine to prohibit the government from mentioning her prior felony conviction for the distribution of cocaine in 1987 and a motion to suppress the evidence seized from her residence. The court denied all of these motions. Trial commenced on April 13, 1999 and concluded on April 20, 1999. The jury found Bender guilty on all counts, but acquitted Culliver of possession with intent to distribute powder cocaine as charged in Count 4. A sentencing hearing was held on August 20, 1999. The court sentenced Bender to 120 months on Counts 1, 3, 4, and 5 and 96 months on Count 2, to run concurrently. Culliver was

defendant actually or constructively 'possessed' the weapon, and (2) such possession was during the commission of the offense." *Hill*, 79 F.3d at 1485. Constructive possession of a firearm occurs when the defendant has

> the ownership, or dominion or control over the item itself, or dominion over the premises where the item is located. . . . Once it is established that a defendant was in possession of a weapon during the commission of an offense, a presumption arises that such possession was connected to the offense . . . . The burden then shifts to the defendant to show that it is clearly improbable that the weapon was connected to the offense.

*Id.* (citing *United States v. Sanchez*, 928 F.2d 1450, 1460 (6th Cir. 1991)) (internal quotation marks omitted). We will uphold the district court's factual findings unless they are clearly erroneous. *See Hill*, 79 F.3d at 1481.

Bender and Culliver shared the house and the bedroom at 4610 Forest Ridge Drive in Hermitage, Tennessee, even though Culliver split his time between Tennessee and Florida. It was uncontroverted at trial that two handguns were found in the bedroom closet, and that various drug paraphernalia was present in the bedroom. Bender testified that Culliver owned the loaded handgun that was found on the shelf in the closet. Expert testimony also established that handguns are typically used in connection with drug offenses. Furthermore, the jury found Culliver guilty of being a felon in possession of a firearm, in addition to conspiring with Bender to distribute cocaine base. The firearm conviction had to be based on the handguns located at the Forest Ridge Drive address, because no other proof of firearms possession was introduced into evidence.

Even though Culliver was in Florida at the time of the search, his conviction arose from his involvement in sending drug parcels to the Nashville residence and receiving money transfers from the sale of drugs in Tennessee. "This court has consistently held that possession of a firearm under section 2D1.1(b)(1) 'is attributable to a co-conspirator not present at

The district court heard both proof and argument at the sentencing hearing regarding the quantity of cocaine base that was contained in the parcel. Such a hearing was required because Culliver had objected to the quantity of 21.6 grams that was used in the Presentence Investigation Report. *See* Fed. R. Crim. P. 32(c). Given the sworn testimony of Jordan and the corroboration by the other postal inspectors who participated in the interception and search of the parcel destined for Bender's residence, we conclude that the district court's factual finding that Culliver was responsible for 21.6 grams of cocaine base was not clearly erroneous. *See United States v. Hill*, 79 F.3d 1477, 1481 (6th Cir. 1996) (declaring that the district court's factual findings will be upheld unless they are clearly erroneous). The district court was therefore correct in assigning Culliver a base offense level of 28, because he was responsible for over 20 grams of cocaine base under § 2D1.1(c)(6) of the United States Sentencing Guidelines.

### G. The district court did not err in sentencing Culliver for possessing a firearm in connection with a drug-trafficking offense

Culliver also challenges the district court's determination that Culliver's base offense level should be increased pursuant to § 2D1.1(b)(1) of the United States Sentencing Guidelines. This Guideline calls for a two-level increase "[i]f a dangerous weapon (including a firearm) was possessed" during the unlawful manufacturing, importing, exporting, or trafficking of a controlled substance. Application note 3 further states that the § 2D1.1(b)(1) adjustment "should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." United States Sentencing Guidelines Manual § 2D1.1 cmt. n.3. Culliver argues that because he was in Florida, the weapon was not *present* at the location where he was committing the offense.

For a court to impose a sentence enhancement under § 2D1.1(b)(1), "the government must establish that (1) the

sentenced to 135 months on Counts 1 and 3, 96 months on Count 2, and 125 months on Count 5, to run concurrently. Bender and Culliver both filed timely appeals.

## II. ANALYSIS

### A. The district court did not err in denying Bender's motion to suppress

Bender argues that the district court erred in failing to grant her motion to suppress the evidence that was seized from her residence on February 22, 1996. She contends that probable cause to search her residence was lacking and that the warrant was improperly executed because the law enforcement agents entered her home after she accepted the package but before she opened it.

When reviewing decisions on motions to suppress evidence, we will not disturb factual findings unless they are clearly erroneous. *See United States v. Smith*, 182 F.3d 473, 476 (6th Cir. 1999). We review legal conclusions de novo. *See id.* A magistrate judge's decision to issue a search warrant "is to be accorded great deference by the reviewing court." *United States v. Lawson*, 999 F.2d 985, 987 (6th Cir. 1993) (citation and internal quotation marks omitted).

We hold that there was probable cause to issue the search warrant in question. This case represents a typical controlled-delivery drug bust. Postal Inspector Jordan's affidavit in support of the search warrant contains sufficient information to make it probable that "a search would uncover evidence of wrongdoing." *Smith*, 182 F.3d at 476 (citing *Illinois v. Gates*, 462 U.S. 213, 236 (1983)). The observed frequency of Express Mail drug deliveries between Florida and the Nashville area, the positive identification of a controlled substance by a drug-detection dog, and the discovery of approximately 21.6 grams of cocaine base in the Express Mail package all supported the issuance of an anticipatory search warrant. *See Lawson*, 999 F.2d 987-88 (holding that there was probable cause to issue an anticipatory search warrant in a similar controlled-delivery drug case where postal

inspectors intercepted an Express Mail package and detected narcotics).

Furthermore, we conclude that the district court did not err in denying Bender's motion to suppress based on the manner in which the warrant was executed. Bender testified that she did not open the Express Mail parcel after she signed for it, and that the transmitter did not activate. But the law enforcement entry team testified that the transmitter did activate, and that the package had already been opened and was lying on Bender's bed when they first entered the bedroom. In any event, the search warrant did not require that the transmitter be activated in order to conduct a daytime search. The search warrant adopted the conditions set forth in the affidavit of Postal Inspector Jordan. Jordan's affidavit described the following parameters to effectuate the search:

> I desire to install [a transmitter] and for a period of ten days seek authorization to enter the residence and/or structure of the person or persons who have custody of the parcel *after someone at the residence accepts and signs a delivery receipt for the parcel, takes possession of the parcel and takes the parcel into the residence.* I also seek authorization to enter the residence or structure *at night* if the transmitter enclosed in the parcel enters the alarm mode or ceases transmitting.

(Emphasis added.)

Based on the conditions described above, it is clear that as long as the postal inspectors and entry team executed the search warrant during the daytime, the prerequisite for the entry was simply the signing of the delivery receipt, acceptance of the parcel, and the taking of the parcel into the residence. Because these conditions were met, the warrant was properly executed and the district court did not err in denying Bender's motion to suppress.

wire transfers to Florida that totaled $9,500 over the course of two and a half months. The drug paraphernalia found at Bender's residence also strongly indicated that Bender was engaged in the sale and distribution of cocaine base, as did the presence of firearms in the vicinity of the drug-related items. As such, we conclude that the evidence was sufficient for a rational trier of fact to find Bender guilty on all of the five counts charged.

**F.  The district court did not err in sentencing Culliver based on the distribution of 21.6 grams of cocaine base**

Culliver challenges his sentence by arguing that the district court erred in holding him responsible for conspiring to distribute and for distributing 21.6 grams of cocaine base. He claims that the government's evidence at trial established that he was responsible at most for only 19.86 grams of cocaine base. This small difference is significant because the offense level under the United States Sentencing Guidelines increases if the quantity of cocaine base exceeds 20 grams.

The relevant testimony on this issue established that once the parcel destined for the 4610 Forest Ridge Drive residence was intercepted, it was opened pursuant to a search warrant. In his sworn affidavit in support of a subsequent search warrant for Bender's residence, Postal Inspector Max Jordan stated that the parcel contained a cookie-shaped substance that constituted approximately 21.6 grams of cocaine base. Jordan further represented under oath that the scale used on site to weigh the substance was reliable and accurate. The postal inspectors retained a sample of the cocaine base to repackage in the parcel for the controlled delivery. Jordan also testified at the sentencing hearing that three samples were extracted from the cocaine base cookie for the purpose of conducting the field test to determine the substance. As a result, the sample that was sent to the laboratory, 19.86 grams of cocaine base, was not the full amount of cocaine base that was originally contained in the parcel.

The Supreme Court has held that "[i]t is well established that when a jury has no sentencing function, it should be admonished to reach its verdict without regard to what sentence might be imposed." *Shannon v. United States*, 512 U.S. 573, 579 (1994) (footnote and internal quotation marks omitted). We have held that when, as here, the jury had no sentencing function, "the district court did not err in refusing to permit [the criminal defendant] to argue about his possible punishment." *United States v. Chesney*, 86 F.3d 564, 574 (6th Cir. 1996). Given this precedent, we similarly conclude that the district court did not err in prohibiting Bender's counsel from mentioning Bender's possible punishment to the jury.

### E.    The evidence was sufficient to support the jury's guilty verdict against Bender

Finally, Bender submits that the evidence was insufficient to support the jury's verdict that she was guilty on all five counts. We review claims of insufficiency of the evidence by asking "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Able*s, 167 F.3d 1021, 1032 (6th Cir. 1999) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original)). Furthermore, "[c]ircumstantial evidence is sufficient to sustain a conviction." *Id.*

Bender maintains that "the evidence presented to the jury is simply that of Danna Bender being a drug addict/user who received a package that contained a relatively small amount of crack cocaine on February 22, 1996," and that the evidence, therefore, does not support an inference that Bender was engaged in the transportation, receipt, or sale of a controlled substance. Her position is untenable in light of the evidence that was presented at trial. As a result of searching Bender's residence, the government presented convincing evidence that Bender had received numerous packages sent by Culliver from Florida and that she had sent multiple money-

### B.    The district court did not err in allowing the government to cross-examine Bender regarding the nature of her prior conviction

Bender next contends that the district court erred in allowing the government to cross-examine her regarding the nature of her prior conviction. She was convicted in 1987 of conspiracy to distribute powder cocaine and possession with intent to distribute the drug. We will not disturb a district court's admission of testimony regarding a defendant's prior conviction for impeachment purposes unless we conclude that there was an abuse of discretion. *See United States v. Meyers*, 952 F.2d 914, 916 (6th Cir. 1992).

Prior to trial, the district court considered whether Bender's prior conviction could be introduced for the purpose of impeaching her credibility under Rule 609 of the Federal Rules of Evidence. Both parties agreed to stipulate to the fact that Bender was convicted of a felony in 1987 in lieu of requiring the government to introduce evidence of the prior conviction in support of Count 5 (being a felon in possession of a firearm). Beyond the stipulation, the district court agreed to "limit the cross-examination [of Bender] to essentially repeating the stipulation that there is a conviction and getting her to confirm she agreed to it." Nevertheless, the district court gave the following warning:

> [I]t is always of concern to me and the court that the jury not be misled. So, if on direct examination Ms. Bender affirmatively denied knowledge of drugs and otherwise sets up something contrary to the obvious then she will be opening the door and she can make the nature of the conviction more probative than it otherwise is by opening the door. Then I will allow the government to get into what the nature of the conviction is.

Despite this warning, Bender testified on two different occasions during direct examination that she had never sold drugs. She also asserted that she "began using drugs in 1992." The district court concluded that these statements by Bender were misleading. It therefore allowed the government

to bring out on cross-examination the nature of her prior conviction in order to impeach her credibility as a witness. "[W]hen a party opens up a subject . . . [the party] cannot complain on appeal if the opposing party introduces evidence on the same subject." *United States v. Ramos*, 861 F.2d 461, 468-69 (6th Cir. 1988).

We conclude that the district court did not abuse its discretion in allowing the government to impeach Bender's credibility with evidence of her prior conviction. Bender's statements on direct examination that she had never sold drugs and did not begin using them until 1992 opened the door to bringing into evidence the nature of her prior conviction for conspiracy to distribute and possession with intent to distribute cocaine. At the conclusion of the trial, the district court instructed the jury to take the evidence regarding Bender's prior conviction into consideration only for the purposes of evaluating her credibility and for establishing her guilt on Count 5. The district court thus properly allowed the government to use Bender's prior conviction to impeach her credibility, but minimized any prejudicial effect by providing limiting instructions to the jury. *See United States v. Gaitan-Acevedo*, 148 F.3d 577, 591-92 (6th Cir. 1998) (finding no abuse of discretion where the district court allowed evidence of the defendant's prior drug conviction under similar circumstances).

**C.   The district court did not abuse its discretion in allowing Officer Donegan to testify as an expert witness**

Bender further argues that the district court erred in allowing Officer John Donegan to testify as an expert witness on the nature of the drug-trafficking business. Donegan had been a police officer with the Nashville Metro Police Department for 14 years and a member of the Vice/Narcotics Division for 9 of those years at the time of Bender's trial. He had received extensive training in drug crimes and drug trafficking and had even taught classes on drug enforcement and drug interdiction. Donegan was a member of the law

enforcement team that executed the search warrant at Bender's residence on February 22, 1996. He recovered several items from Bender's bedroom, including the paperwork detailing the money transfers and the cookie tins and shaving kit that contained drug paraphernalia.

Bender argues that Donegan "was not properly qualified as an expert witness in that he had little if any direct experience with the sale and distribution of crack cocaine." A district court's admission of expert testimony, however, will not be disturbed unless the district court abused its discretion. *See United States v. Tocco*, 200 F.3d 401, 418 (6th Cir. 2000). We conclude that the district court did not abuse its discretion in allowing Donegan to testify as an expert on the drug-trafficking business and the manufacture and use of powder cocaine and cocaine base. This court "has allowed police officers to testify as expert witnesses about criminal activity since knowledge of such activity is generally beyond the understanding of the average layman." *United States v. Thomas*, 74 F.3d 676, 682 (6th Cir. 1996) (citation and internal quotation marks omitted). Furthermore, we have held that such expert testimony by police officers is not unfairly prejudicial, particularly when the district court provides cautionary instructions to the jury. *See id.* at 683. The district court gave such cautionary instructions in the present case. In sum, the district court did not abuse its discretion in permitting Donegan to testify as an expert witness, and Bender suffered no unfair prejudice as a result of such testimony.

**D.   The district court did not err in prohibiting Bender from informing the jury of the mandatory minimum sentence that Bender would face if convicted**

Bender also argues that she was denied due process when the district court prohibited her counsel from mentioning the mandatory minimum sentence that Bender would receive if she were convicted. We review conclusions of law de novo. *See United States v. King*, 227 F.3d 732, 739 (6th Cir. 2000).