**NOT RECOMMENDED FOR PUBLICATION**
File Name: 06a0678n.06
Filed: September 8, 2006

**Nos. 04-5735, 04-5760, 05-5169**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| | ) | THE MIDDLE DISTRICT OF |
| KENNETH KIMBALL, RANDALL PARKER, and | ) | TENNESSEE |
| STEVE CORLEW, | ) | |
| | ) | |
| Defendants-Appellants. | ) | |

Before: SILER, CLAY, and McKEAGUE, Circuit Judges.

**SILER**, Circuit Judge. Defendants Kenneth Kimball, Randall Parker and Steve Corlew appeal their convictions and sentences for conspiring to possess and distribute illegal drugs, and for Kimball and Parker, conspiracies to murder witnesses and other associates, money laundering, and other offenses. For the reasons set forth below, we AFFIRM the convictions, but VACATE and REMAND the sentences for Kimball and Parker.

**I.**

In 2004, defendants were convicted after a jury trial. Kimball was found guilty of several counts of conspiracy to import drugs, illegal possession with intent to distribute, illegal firearms possession, conspiracy and money laundering, solicitation to commit a crime of violence, and witness tampering. He was sentenced to consecutive life sentences and 15 years. Parker was

convicted of many of the same conspiracies and drug charges as Kimball, but not for soliciting violence, and he was sentenced to life imprisonment. Corlew was found guilty of possessing with the intent to distribute marijuana and was sentenced to 15 years.

BACKGROUND OF THE OFFENSES

*Drug Charges*

Beginning in 1999, Kimball was the head of a drug trafficking operation. He paid others, Corlew included, to import drugs into Nashville from Texas and New Mexico, and then distributed them through Parker and others.

One of Kimball's suppliers in Texas, Russell Bourjaily, sold Kimball's couriers – John Weston and Jimmy Patterson – hundreds of kilograms of cocaine over a one-year period. Patterson and Weston made approximately 10 trips, carrying hundreds of thousands of dollars in cash to El Paso and purchasing around four hundred kilos of cocaine at a time. Margaret Harper, Kimball's assistant and mistress, helped procure the large amounts of cash to pay suppliers. Patterson and Weston usually delivered the contraband to K&K's Auto Service, one of Kimball's businesses in Nashville. Parker served as one of Kimball's principal distributors.

In December 2000, Patterson and Weston drove to El Paso with $ 592,000 in cash to purchase cocaine from Bourjaily. On their way back to Nashville they were stopped at a checkpoint where officers seized approximately 40 kilograms of cocaine and records of other drug purchases.

*Solicitation of Violence*

Patterson told Weston that Kimball had sent unidentified persons to kill Bourjaily, whom Kimball suspected was behind the arrest. Kimball instructed Alva Lock to kill Bourjaily and

provided him with a bomb which Lock kept stored in a locker and kept the detonator in his car. Kimball also gave Lock a Bersa handgun and a silencer. In August 2001, the police found the Bersa and the detonator in Lock's car. In May 2002, the bomb was found in the storage locker when it was opened after the contents were auctioned off for non-payment.

In August 2001, Eric Boyd identified Kimball as having supplied him with several kilos of cocaine. When other informants corroborated the fact that Kimball was a drug supplier in the Nashville area, a confidential informant contacted Patterson and recorded their meetings. During one such meeting, Patterson discussed a drug deal with Parker. These calls made Kimball and Parker erroneously suspect Patterson of cooperating with the police. Harper overheard Kimball and Parker agree that Patterson and Weston should both be killed. Kimball contacted James Bass and asked him to find someone who would do the deed for $ 10,000. Bass in turn contacted Marcel Boyd and Terrell Polk. Parker, Bass, Boyd and Polk met at Parker's business where Parker increased the fee to $ 15,000 to commit the murders and asked whether they could find other triggermen.

In 2002, the government contacted Kimball as part of a Nashville-based investigation. Kimball told Lock he was being investigated by the IRS, and that he had surrendered $ 118,000 in cash. Kimball then became concerned that Parker might testify against him, and asked Lock to kill Parker in addition to Bourjaily. Kimball also promised to pay off Lock's $ 115,000 mortgage. Lock ultimately failed to carry out his plan to kill Parker and Bourjaily.

*Money Laundering*

Kimball purchased "Frank's Auto Salvage" with cash, and used the business as a way to disguise the cash proceeds from the drug sales through structured transactions, and by falsifying sales

of parts and scrap. Additionally, Parker paid cash for a Cadillac at a Nashville auto auction. Parker contacted Kimball and asked him to prepare false documents showing that Parker's sister, Debra Moses, purchased the vehicle from Kimball's used car lot, Tank's Auto Sales.

## II.

Kimball raises several challenges to his conviction and sentence. He contends that the district court erred (A) in not severing the solicitation of violence charges; (B) in not permitting him to strike a juror during voir dire; (C) in admitting evidence of a plan to kill witnesses against him; (D) in refusing to grant a mistrial where the government had agreed not to admit certain statements made during a proffer; (E) in refusing Kimball the opportunity to question the jury after conviction; and (F) by imposing a sentence not supported by the facts found by the jury and not in accordance with *United States v. Booker*, 543 U.S. 220 (2005). He also challenges the sufficiency of the evidence to convict.

## A.

Kimball contends that the district court erred in not severing the "attempted assassination" counts from the trial because it precluded him from presenting an effective defense. However, this issue is not properly before us because Kimball failed to renew his motion for severance at the conclusion of proof at trial. *See United States v. Marks,* 209 F.3d 577, 584 (6th Cir. 2000). We therefore dismiss this portion of the appeal on that basis.

## B.

Kimball contends that he was denied voir dire and a peremptory challenge to a particular juror. We review for an abuse of discretion. *See United States v. Humphry*, 279 F.3d 372, 375 (6th

Cir. 2002). Kimball does not specify what questions were not asked, nor where or how counsel was cut off. Secondly, Kimball claims that he was prevented from striking Juror Cook. However, it was only after defense counsel missed the opportunity to strike Cook and then sought to go back and do so that the district court denied the request. The court had previously ruled that parties could not "back strike" a juror once he was accepted. In *Humphry,* we refused to review a similar claim because defense counsel simply wanted the court to overlook its back-striking rule but was not challenging the propriety of the rule itself. *Id.* at 375-76. Here, Kimball does not argue why the district court abused its discretion by following its own ruling against back-striking.

### C.

Kimball contends that the district court abused its discretion by admitting evidence (1) of his plan to kill Patterson and Weston and (2) of a police chase of Amilcar Butler which resulted in the seizure of cocaine. However, though this motion was made *in limine* it is not properly before us because there was no contemporaneous objection made at trial to preserve it for appeal. *See United States v. Kelly*, 204 F.3d 652, 655 (6th Cir. 2000). Furthermore, as he does not argue that the district court's actions constituted plain error, we decline to conduct any such analysis.

### D.

Kimball appeals the denial of his motion for a mistrial after Lock testified that he cooperated with the government on behalf of Kimball. We review this issue for an abuse of discretion. *See United States v. Wall*, 130 F.3d 739, 745 (6th Cir. 1997). The only basis Kimball offers for his objection is a formal agreement between the government and himself not to admit the fact of, or any statements made during, his cooperation. However, the agreement provided for a waiver of this

restriction should defense counsel "open the door" by soliciting testimony which differed from what was provided during the proffer. The district court held that Defense counsel did so on direct examination. Kimball neither addresses the district court's holding nor how it violated the agreement. Therefore, we find no abuse of discretion.

**E.**

Kimball appeals the denial of his motion for post-verdict interrogation of the jury to discern whether there were improper external influences. We reject Kimball's argument because he fails to cite to any evidence of misconduct. *See, e.g., Green Constr. Co. v. Kansas Power and Light Co.*, 1 F.3d 1005, 1012 (6th Cir. 1993) (upholding denial of motion to interview the jury where claim of impropriety was unsubstantiated).

**F.**

Kimball complains that his sentence violated *Booker*. Because this objection was not raised before the district court, we review it for plain error. *See Johnson v. United States*, 520 U.S. 461, 466-67 (1997). He first claims a Sixth Amendment violation because his sentence for the drug charges was based upon a finding of 150 kilograms of cocaine which was higher than the amount charged. There is no Sixth Amendment violation if the sentence imposed does not exceed the maximum authorized by the facts found by the jury. *See United States v. Stafford*, 258 F.3d 465, 478-79 (6th Cir. 2001). Kimball concedes that the jury found him guilty of "five kilograms or more of cocaine" as alleged in the indictment. That charge carries with it a maximum punishment of a life sentence, *see* 21 U.S.C. § 841(b), which is what he received. Therefore, there is no Sixth Amendment violation here. Furthermore, a district court is permitted to accept unchallenged

Presentence Report ("PSR") findings as conclusive. *See* Fed. R. Crim. P. 32(i)(3)(A). Because Kimball did not contest the amount in the PSR, it is too late for him to challenge the quantity.

Second, Kimball contends that because he was sentenced under the mandatory guidelines regime abrogated by *Booker*, his case should be remanded for resentencing under *United States v. Barnett*, 398 F.3d 516, 529-30 (6th Cir. 2005). There is a presumption of clear error where a sentence was imposed under a belief that the guidelines were mandatory. *See id. at* 529. The government contends that the district court's refusal to depart downwardly, and its statement that "The reason for this sentence is two-fold: It's mandated by law and it's appropriate for all the reasons set forth in 18 U.S.C. § 3553," evince an unwillingness to mete out a lower sentence even if given the opportunity. However, sentences were required to conform to the standards under § 3553(a) before *Booker* was decided. Furthermore, the sentence was not at the low end of the ranges and it is just as likely as not that the court's unwillingness to depart downwardly was due to its deference to the mandatory nature of the guidelines. Therefore, we will vacate Kimball's sentence and remand for resentencing.

## G.

Kimball contends that there was insufficient evidence to convict him because the testimony against him was not credible. Challenging the sufficiency of the evidence requires demonstrating that the prosecution's case lacked support for one or more elements for conviction. *See United States v. Chambers*, 441 F.3d 438, 449 (6th Cir. 2006). Witness credibility, however, is not a matter of the sufficiency of the evidence. Therefore, Kimball's argument fails.

## III.

Parker first contends that the base level of his cocaine charge was erroneously calculated because the jury did not find that he was liable for 150 kilograms of cocaine. Here, Parker concedes that he was found guilty for "five kilograms or more of cocaine." The statutory maximum applicable to such an amount is life imprisonment, *see* 21 U.S.C. § 841(b), which is what he received. Thus, there is no Sixth Amendment violation. And because Parker points to no fact that would undermine the district court's preponderance finding as to the quantity of drugs, there is no error in the PSR.

This also renders moot Parker's objections to the sentencing enhancements. Because he received a guidelines sentence of life which was recommended for his drug charges alone, he in fact received no increased sentence based upon the enhancements. Therefore, there is no plain error. *See Stafford*, 258 F.3d at 478-79.

However, we vacate and remand Parker's sentence for the same reasons discussed in Kimball's case.

**IV.**

**A.**

Corlew contends that (1) his sentence was imposed in violation of *Booker*'s plain error standard as well as in violation of his Sixth Amendment rights; (2) he should have received downward adjustments for acceptance of responsibility and playing a minor role; and (3) his enhancements for firearms and obstruction of justice were not supported by sufficient evidence.

First, Corlew was sentenced after *Booker*, and the district court expressly noted that the guidelines were merely advisory and that it believed the sentence was reasonable given the factors in § 3553(a). Moreover, he was convicted of conspiracy to possess with intent to distribute over 50

kilograms of marijuana. Under 21 U.S.C. § 841(b)(1)(C), the maximum sentence he could have received was 20 years. Corlew received a sentence of 180 months which is well below the statutory maximum. Therefore, there was no Sixth Amendment violation.

Second, Corlew fails to state why he should have received the downward adjustments. No law is cited and no argument is made. Therefore, there is no basis to conclude that the district court abused its discretion in denying the adjustments. *See Shah v. Racetrac Petroleum Co.*, 338 F.3d 557, 571 n.8 (6th Cir. 2003).

Finally, the upward enhancements were supported at trial by a preponderance of the evidence. The district court found that "Defendant Kimball was routinely armed during the course of the conspiracy and that it was reasonably foreseeable to Defendant Corlew that Defendant Kimball would possess guns during their jointly undertaken criminal activity . . . . It is not clearly improbable that the weapons were connected to the offense. USSG § 2D1.1(b)(1), App. n.3." Corlew fails to show how this is erroneous except to argue that there was no evidence that he carried a firearm during the commission of the offenses. However, USSG § 2D1.1(b)(1) "calls for a two-level increase 'if a dangerous weapon (including a firearm) was possessed' during the unlawful manufacturing, importing, exporting, or trafficking of a controlled substance. Application note 3 further states that the § 2D1.1(b)(1) adjustment 'should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense.'" *United States v. Bender*, 265 F.3d 464, 474 (6th Cir. 2001). The enhancement can be applied if "(1) the defendant actually or constructively 'possessed' the weapon, and (2) such possession was during the commission of the offense." *United States v. Hill*, 79 F.3d 1477, 1485 (6th Cir. 1996). The possession of a firearm

under section 2D1.1(b)(1) "is attributable to a co-conspirator not present at the commission of the offense as long as it constitutes reasonably foreseeable conduct." *See United States v. Williams*, 894 F.2d 208, 211 (6th Cir. 1990). Given the breadth and seriousness of the offenses, there was ample evidence to conclude that one of Corlew's coconspirators, especially Kimball, would possess a weapon during their interactions. It is therefore irrelevant – even if true – that Corlew never personally carried a gun or saw Kimball's.

Corlew's obstruction of justice enhancement under USSG § 3C1.1 was supported at trial by Harper's testimony that Corlew asked her to "take the fifth" before the grand jury. He presents no contrary evidence nor demonstrates how the district court made an erroneous factual finding.

Therefore, Corlew fails to prove that his sentence was based upon any clear errors made by the district court.

**B.**

Corlew seeks a new trial because the grand jury heard testimony that he had bought drugs in El Paso, whereas at trial the testimony was that he purchased drugs in New Mexico. We review this issue de novo. *See United States v. Robison*, 904 F.2d 365, 368 (6th Cir. 1990). The district court correctly noted that Corlew was charged and convicted of conspiring with Kimball. Neither El Paso nor New Mexico was a charging term of the indictment nor material to the charges, and the deviation did not result in conviction of a crime other than the one charged. *See United States v. Combs*, 369 F.3d 925, 936 (6th Cir. 2004).

Therefore, Corlew does not merit a new trial.

**V.**

For the forgoing reasons, we AFFIRM the Defendants' convictions and Corlew's sentence,

but VACATE the sentences for Kimball and Parker and REMAND for their re-sentencing.