**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 06a0705n.06
Filed: September 28, 2006

**No. 04-1462**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

_____

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | On Appeal from the United States |
| Appellee, ) | District Court for the |
| ) | Eastern District of Michigan |
| v. ) | |
| ) | **AMENDED OPINION** |
| MARK ARHEBAMEN, ) | |
| ) | |
| Appellant. ) | |
| _____) | |

**Before: MOORE and GIBBONS, Circuit Judges; and ACKERMAN, District Judge.**[*]

**HAROLD A. ACKERMAN, Senior District Judge.**

Defendant/Appellant Mark Arhebamen appeals his judgment of conviction and sentence.

We **AFFIRM** Defendant's conviction, **VACATE** his sentence, and **REMAND** for resentencing

pursuant to *United States v. Booker*, 543 U.S. 220 (2005).

**I. Background**

Defendant Mark Arhebamen was born in Nigeria in 1953, and entered the United States

on a visitor's visa in 1977. He was found deportable by the Immigration and Naturalization

_____

[*]Honorable Harold A. Ackerman, Senior United States District Judge for the District of
New Jersey, sitting by designation.

1

Service in 1978. In 1999, Defendant was indicted in the Eastern District of Michigan under the alias McMaine O'Georgia on 22 counts of aiding and assisting in the preparation of false tax returns in violation of 26 U.S.C.§ 7602.[1] He pled guilty to one count of tax fraud in 2001 before District Judge Gerald E. Rosen. During the plea, he falsely stated that he was an American citizen. He was scheduled for sentencing on June 28, 2001. Defendant secured a one-month extension based on a letter from a psychiatrist recommending that Defendant not attend any court proceedings until he was stabilized on medication. Defendant told the psychiatrist that he had a history of schizophrenia and hallucinations.

In an interview with the Probation Department prior to sentencing, Defendant made several false statements regarding his name, place of birth, social security number, educational background, and prior civil and criminal litigation experience as a defendant. Also prior to sentencing, in violation of his conditions of release, Defendant moved to Arizona with his family. During this time, he contacted Judge Rosen's chambers and Pretrial Services and complained about seeing "wild bears" in the courtroom. Two days prior to sentencing, Defendant claimed to run out of medication despite being prescribed an ample supply by his prior psychiatrist. He visited a psychiatrist in Arizona and again secured a letter requesting adjournment until he was stabilized. Defendant failed to appear for his scheduled sentencing on July 25, 2001, and Judge Rosen issued an arrest warrant.

---

[1]Defendant has used several aliases. He has claimed at times to have been born with the name McMaine Allen O'Georgia. On other occasions, he has sought birth certificates and social security numbers in that name, claiming that he took this name because he was born in Georgia, attended Oxford University, and traveled to Nigeria and England. In truth, Defendant took a correspondence course from the Oxford University Press, and was born in Nigeria, not Georgia. He has also used the alias Mark Andrew.

Judge Rosen sentenced Defendant in January 2002 to 21 months imprisonment and one year of supervised release on the tax fraud case. This Court affirmed the conviction but the judgment was later vacated and remanded by the Supreme Court for resentencing under *Booker*. Judge Rosen resentenced Defendant to the same sentence, 21 months imprisonment, in November 2005. In connection with the instant appeal, which stems from a subsequent conviction, Defendant has filed a pro se brief which appears to argue that the indictment in his prior tax fraud case before Judge Rosen was defective for failure to charge the relevant conduct considered by Judge Rosen on resentencing.

While Defendant's tax fraud appeal and resentencing were pending, another grand jury in the Eastern District of Michigan returned a second indictment against Defendant, charging him with: failure to appear for sentencing in the tax fraud case, in violation of 18 U.S.C. § 3146(a)(1); making false claims of United States citizenship, in violation of 18 U.S.C. § 911; corruptly endeavoring to obstruct justice by lying to the Probation Office, in violation of 18 U.S.C. § 1503; and two counts of making false statements to judicial officials, in violation of 18 U.S.C. § 1001. This matter was assigned to then Chief Judge Lawrence P. Zatkoff.

Defendant filed many pro se pre-trial motions, including motions seeking the recusal of Judge Zatkoff, motions requesting change of venue due to allegedly negative pretrial publicity, and motions in limine to exclude evidence of certain of his many prior convictions. Judge Zatkoff denied all of these motions. Defendant has filed a total of 10 interlocutory appeals of these and other pretrial decisions, all of which this Court has dismissed for lack of jurisdiction. This Court has also dismissed three additional appeals as duplicate appeals, and Defendant has filed a pending appeal of the denial of his habeas corpus petition challenging a detainer issued by

the Department of Homeland Security. This Court has also affirmed another interlocutory appeal in which Defendant challenged his pretrial detention.

Prior to trial on the second indictment, Defendant filed notice that he planned to offer an insanity defense at trial. Judge Zatkoff ordered that Defendant submit to a mental evaluation; Defendant appealed this order, and this Court affirmed. After a hearing, the District Court found Defendant competent to stand trial. Defendant stood trial in 2003 on the second indictment, and represented himself. The jury returned a guilty verdict on all counts. Judge Zatkoff sentenced Defendant to 152 months imprisonment. In so doing, Judge Zatkoff issued a substantial upward departure under the Guidelines: he increased Defendant's total offense level from 19 to 28 and increased his criminal history category from V to VI.

This Court appointed counsel for Defendant's appeal, and appointed counsel has raised four issues in this timely appeal. Defendant has also filed a pro se motion to strike his lawyer's brief, arguing that his counsel should have raised a double jeopardy claim because his instant conviction for making false statements involved similar conduct as involved in his prior conviction for tax fraud.

The District Court had jurisdiction over this criminal case pursuant to 18 U.S.C. § 3231. This Court has jurisdiction to hear this timely appeal pursuant to 28 U.S.C. § 1291.

## III. Analysis

### A. Defendant's Pro Se Arguments Lack Merit

As a preliminary matter, this Court rejects the arguments made by Defendant in his pro se briefs. With regard to his argument that his prior tax fraud indictment was somehow defective,

Defendant failed to file a timely appeal from his amended judgment of conviction in the tax fraud case, and that conviction is not implicated in the instant appeal. Defendant's attempt to strike his lawyer's brief for failure to include a double jeopardy claim also lacks merit. Any double jeopardy claim here fails, as Defendant has been charged and convicted of violating a separate criminal statute from the tax fraud statute, and the statutes include many different elements from one another. *Rashad v. Burt*, 108 F.3d 677, 679 (6th Cir. 1997) (citing *Blockburger v. United States*, 284 U.S. 299, 304 (1932)).

**B. The District Court Did Not Abuse Its Discretion in Denying Defendant's Motions for Recusal and Change of Venue**

We review a lower court's denial of a recusal motion for abuse of discretion. *In re Triple S Rests., Inc.*, 422 F.3d 405, 417 (6th Cir. 2005). A judge must recuse himself "in any proceeding in which his impartiality might reasonably be questioned" or where "he has a personal bias or prejudice concerning a party." 28 U.S.C. § 455(a), (b). Disqualification must be based "upon extrajudicial conduct rather than on judicial conduct" and upon "a personal bias as distinguished from [a] judicial one, arising out of the judge's background and association and not from the judge's view of the law." *Green v. Nevers*, 111 F.3d 1295, 1303-04 (6th Cir. 1997) (internal quotations and citations omitted).

We also review a district court's refusal to change venue for abuse of discretion. *United States v. Jamieson*, 427 F.3d 394, 412 (6th Cir. 2005). Change of venue is required where "the court is satisfied that so great a prejudice against the defendant exists in the transferring district that the defendant cannot obtain a fair and impartial trial there." Fed. R. Crim. P. 21(a). "It is

5

not necessary for the jury to be totally ignorant of the case or to be wholly free from any exposure to pretrial publicity." *Jamieson*, 427 F.3d at 412 (citing *Irvin v. Dowd*, 366 U.S. 717, 722 (1961)). A claim for change of venue based on pretrial publicity must be based on "demonstrable reality" rather than speculation, *Kelly v. Withrow*, 25 F.3d 363, 368 (6th Cir. 1994), and a juror must only be able to "lay aside his impression or opinion and render a verdict based on the evidence presented in court," *Irvin*, 366 U.S. at 723.

Defendant argues that not only should Judge Zatkoff have recused himself, but *all* the district judges in the Eastern District of Michigan should have recused themselves and his case should have been transferred to another district. He contends that: 1) he had appeared before many Eastern District of Michigan judges and they were therefore biased against him; 2) the judges and potential jurors were biased against him because Defendant appeared on the television program "Michigan's Most Wanted"; 3) Judge Zatkoff was biased because Defendant wrote letters and motions to Judge Zatkoff in his capacity as Chief Judge during the pendency of Defendant's initial tax fraud matter before Judge Rosen; and 4) he planned to call Judge Rosen as a witness in his trial before Judge Zatkoff.

Defendant's questionable charges of bias against Judge Zatkoff are based on judicial conduct rather than extrajudicial conduct and therefore cannot serve as bases for recusal. With regard to the bias of Judge Zatkoff and other judges based on prior appearances by Defendant in the Eastern District of Michigan, "opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Liteky v. United States*, 510 U.S. 540,

6

555 (1994). Defendant demonstrates no such antagonism on Judge Zatkoff's part here. Defendant's apparent intention to call Judge Rosen as a witness did not mandate recusal because any relationship between Judge Zatkoff and Judge Rosen was not an "intimate, personal" one or one in which Judge Zatkoff would somehow be "obligated" to Judge Rosen, and Judge Rosen had no stake in the outcome of Defendant's trial. *United States v. Dandy*, 998 F.2d 1344, 1349-50 (6th Cir. 1993).

With regard to change of venue, none of the jurors indicated that they knew Defendant despite his apparently brief appearance on "Michigan's Most Wanted." Defendant did not ask any potential jurors about his alleged television appearance, and the District Court did not abuse its discretion in finding that the one airing of that show and Defendant's short appearance on it did not render the jury unable to render a fair verdict.

Defendant's arguments for recusal and change of venue are based on speculation and lack merit. The District Court did not abuse its discretion in denying Defendant's requests.

### C. The District Court Did Not Commit Clear Error in Finding Defendant Competent to Stand Trial

Defendant contends that the District Court erred in finding him competent to stand trial. "A defendant's competence is a question of fact, which we review for clear error." *Harries v. Bell*, 417 F.3d 631, 635 (6th Cir. 2005). "A defendant is mentally incompetent to stand trial if he lacks a 'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding' and 'a rational as well as factual understanding of the proceedings against him.'" *Id.* (quoting *Dusky v. United States*, 362 U.S. 402, 402 (1960) (per curiam)).

7

At Defendant's pretrial competency hearing, a forensic psychologist testified that Defendant's symptoms were fabricated and Defendant was able to assist in his defense. Defendant argues on appeal that his "irrational behavior prior to and during trial clearly indicates that he lacks the ability to stand trial." (Appellant's Br. 19.) Contrary to Defendant's suggestion, the District Court relied both on the forensic testimony and the court's observations of Defendant, including the grasp of his case that Defendant demonstrated in his many pro se filings. While Defendant's behavior might have been bizarre, the District Court did not clearly err in finding Defendant competent in light of the clinical evidence presented.

### D. The District Court Did Not Err in Admitting Evidence of Defendant's Prior Convictions

Federal Rule of Evidence 609(a)(1) allows the admission of evidence of a witness's prior conviction to impeach that witness if the crime was punishable by a sentence of greater than one year and if the probative value of the evidence outweighs its prejudicial effect. Where the crime "involved dishonesty or false statement, regardless of the punishment," Federal Rule of Evidence 609(a)(2) allows evidence of conviction to be admitted without any balancing test. At trial, the District Court allowed the Government to present, for impeachment purposes, evidence of Defendant's many prior Michigan convictions. On appeal, Defendant challenges the admission of his prior convictions for drawing on insufficient funds, defrauding an innkeeper, drawing a check without a bank account, and absconding or forfeiting a criminal bond. We review these evidentiary rulings for abuse of discretion. *United States v. Gaitan-Acevedo*, 148 F.3d 577, 591 (6th Cir. 1998).

Defendant's prior convictions for drawing on insufficient funds, defrauding an innkeeper, drawing a check without a bank account, and tax fraud were admissible under Rule 609(a)(2). His conviction for drawing on insufficient funds, under Mich. Comp. Laws Ann. § 750.131, expressly required proof of intent to defraud and Michigan's own courts have held that § 750.131 involves an element of dishonesty or false statement under Michigan's equivalent of Rule 609(a)(2). *People v. Baidas*, No. 215006, 2001 WL 674853, at *3 (Mich. Ct. App. Apr. 27, 2001). Similarly, Michigan's statutes prohibiting the defrauding of an innkeeper, Mich. Comp. Laws Ann. § 750.292, and drawing a check on a bank without a bank account, Mich. Comp. Laws Ann. § 750.131a, both require proof of intent to defraud.[2] Defendant argues generally that all of these convictions were "mere banking matters," but fails to demonstrate how such a bland categorization strips these convictions of their elements of dishonesty or false statement.

Finally, with regard to Defendant's prior conviction for absconding, the District Court did not err in admitting evidence of that conviction under Rule 609(a)(1). In undertaking the balancing test required under Rule 609(a)(1), "a court must make an on-the-record finding based on the facts that the conviction's probative value substantially outweighs its prejudicial impact" and may consider factors such as "(1) the impeachment value of the prior crime, (2) the point in time of the conviction and the witness' subsequent history, (3) the similarity between the past crime and the charged crime, (4) the importance of the defendant's testimony, and (5) the centrality of the credibility issue." *United States v. Meyers*, 952 F.2d 914, 916-17 (6th Cir.

---

[2]Defendant argues that his conviction for defrauding an innkeeper should have been excluded because he had no intent to defraud and he was not represented by counsel on that offense. However, he was convicted of violation of Mich. Comp. Laws Ann. § 750.292, which expressly includes an element of intent to defraud, and Defendant's record of conviction indicates that he was indeed represented by counsel at the time.

1992). Here, evidence of Defendant's prior conviction for absconding, even though it was similar to the charged crime of failure to appear for sentencing, was highly probative because Defendant's credibility was a central issue at trial. Furthermore, the District Court mitigated any prejudice to Defendant from admission of the conviction by giving the jury an appropriate limiting instruction. *See United States v. Bender*, 265 F.3d 464, 471 (6th Cir. 2001).

The District Court did not err in admitting evidence of Defendant's prior convictions.

### E. This Court Must Vacate Defendant's Sentence and Remand for Resentencing under *Booker*

This Court affirms Defendant's conviction but must remand for resentencing. Defendant was sentenced on April 6, 2004, prior to the Supreme Court's holding in *United States v. Booker* that the United States Sentencing Guidelines are advisory. We review Defendant's argument that his sentence violates *Booker* for plain error, because Defendant did not raise this issue below. *United States v. Oliver*, 397 F.3d 369, 375 (6th Cir. 2005). To establish plain error, Defendant must show that error occurred, that it was plain, that it affected his substantial rights, and that it seriously affected the integrity of the proceedings. *United States v. Barnett*, 398 F.3d 516, 525-30 (6th Cir. 2005). This Court presumes that a defendant has been prejudiced if the district court believed that the Guidelines were mandatory. *Id.* at 529. This presumption may only be overcome if "the trial record contains clear and specific evidence that the district court would not have, in any event, sentenced the defendant to a lower sentence under an advisory Guidelines regime." *Id.* A sentence imposed under the pre-*Booker* sentencing regime satisfies the requirement that an error seriously affect the integrity of the proceedings. *Id.* at 530.

10

Here, the District Court departed upward from the Guidelines under U.S.S.G. § 5K2.0, as it found that the Guidelines failed to account adequately for certain factors. From the initial total offense level of 19, the District Court increased Defendant's offense level to 28. Judge Zatkoff increased the offense level by two levels for obstructing justice, two levels for disrupting the sentencing proceedings in his tax fraud case, two levels for moving to Arizona to avoid sentencing in that case, one level for extensive planning in his current offenses, and one level for making false statements to conceal another offense. The court also increased Defendant's criminal history category from V to VI after finding that category V under-represented the seriousness of Defendant's prior criminal conduct. The court thus found Defendant subject to a Guideline range of 140 to 175 months imprisonment, and sentenced Defendant to 152 months, towards the bottom of the adjusted range.

While the District Court issued a substantial upward departure, such a departure in itself is not necessarily enough to rebut the presumption of prejudice from a *Booker* error. *United States v. Meeker*, 411 F.3d 736, 746 (6th Cir. 2005) (finding plain error where district court issued upward departure). Furthermore, a sentence towards the bottom of the Guideline range suggests that the District Court might have sentenced Defendant to a lower sentence had it known that the Guidelines were advisory. *Barnett*, 398 F.3d at 516 (holding that a mid-range sentence was insufficient to rebut presumption of prejudice); *cf. United States v. Trammel*, 404 F.3d 397, 402 (6th Cir. 2005) (finding that sentence at bottom of range suggests an "even greater chance" that district court would have issued lower sentence had it known that Guidelines were advisory). The Government relies on *United States v. Webb*, in which this Court found the presumption of prejudice to be rebutted where the district court referred to the defendant as a

11

"menace" and sentenced defendant to the *maximum* sentence within the guideline range. 403 F.3d 373, 381-82 (6th Cir. 2005). However, while the District Court departed upward and expressed its serious concern with Defendant's conduct here, Judge Zatkoff sentenced Defendant towards the bottom of the final Guideline range. The District Court could have imposed a different, lower sentence had it not had to apply the levels and ranges stipulated by the Guidelines. We therefore remand for resentencing.

## IV. Conclusion

For the foregoing reasons, this Court **AFFIRMS** Defendant's conviction, **VACATES** Defendant's sentence, and **REMANDS** for resentencing pursuant to *Booker*.